2017-60043 Jenkins v. Hall, et al. I represent the Petitioner-Appellant in this case, Robert Jenkins. Even if this Court's interpretation of Bullcoming in Grimm v. Fisher is correct, Mr. Jenkins is still entitled to a writ of habeas corpus in this case. Alison Smith's out-of-court testimonial statement that the substance possessed by Mr. Jenkins weighed 0.1 gram, which was the statutory minimum for a conviction in this case, was introduced through the testimony of Timothy Gross. And Gross was no more involved, which was the test the Court laid out in Grimm. Gross was no more involved in Smith's weighing of the substance or her report that it weighed 0.1 gram than was the testifying analyst in Bullcoming. Gross didn't participate in or observe Smith's weighing of the substance. He didn't weigh it himself. He didn't review any data to determine whether or not her conclusion about the weight was correct, because there was no data to review. Indeed, he admitted that he didn't actually know how much the substance weighed. What he said was that a sample reported out to be 0.1 gram could be anywhere between 0.1 and 0.19 grams. In other words, he explained what Alison Smith's report meant. That her report that it weighed 0.1 gram meant that she weighed it to be between 0.1 and 0.19. So to the extent that Gross reached any conclusion at all in this case about the weight of this substance, he did it by reading Alison Smith's report. And that's simply not allowed, even under Grimm's interpretation of what Bullcoming stands for and what the Confrontation Clause requires. So it is a difficult argument, because you've got to establish clearly this is clearly established, and yet there's been mayhem out there in the courts as to applying Bullcoming, Crawford, in the lab supervisor signing context. Yes, Your Honor. And we have a separate argument, and I realize that this panel is bound by the Grimm panel. We have a separate argument that Grimm was wrongly decided, that there is a clearly established rule. But when you say Gross had no ñ had equivalent to, what was the fellow's name, a Rakatos or something? It was a Koehler and a Rasaka. Something like that. Yes, Your Honor. Okay. But he did have more involvement. I mean, a lot of this turns on just ñ he wasn't a custodian. You would say he was a mouthpiece. But, in fact, he signs it, and throughout the testimony, he's talking about independent verification. He is, Your Honor, about her test ñ separate conclusion that the substance was cocaine. But at no point does he express an opinion that it weighed 0.1 gram. He's very careful throughout his testimony. But he did sign the report that describes it as 1 gram. He did, Your Honor. He signed the report as the technical reviewer. Yeah. He also signed it as the administrative reviewer. Right. And he explained what the two differences were. And he explained what his technical review was. He was very clear about the data he reviewed. He said he reviewed the data from the cobalt thiocyanide test. That was the Koehler test. And he reviewed the data from the GCMS test. And based on those, he did testify that he reached an independent and expert conclusion. You embraced the dissenting judge position in Mississippi. Is that fair to say? Yes, Your Honor. That at least with respect to ñ well ñ Not the dissenting judges in the Mississippi Supreme Court case, Your Honor. Well, the dissent is what it is. But I thought they weren't saying this is clearly established by Bull Cumming, this is a difficult area, and we would hold the following. But if that's an accurate description, that doesn't get habeas relief. Well, made more difficult, Your Honor, by the Fifth Circuit, the panel decision in Grimm. That interpretation of Bull Cumming ñ Okay, but that gets you back to ñ Gets me back to Bull Cumming. You were going to go to Abach and we'll get Grimm reversed. Yeah, but what the dissenters spoke about in this case and what made this case different from Grimm, and the district court judge did recognize that this was a significant difference, they were arguing both issues, that with respect to the conclusion that it was cocaine, it was not admissible. Yes. We agree that under Grimm, that's incorrect. We think Grimm's wrong, but we agree that under Grimm, that testimonial statement that it was cocaine was admissible. But even under Grimm, the separate testimonial statement that it weighed 0.1 gram, which was essential in order to convict Mr. Jenkins in this case and give him a life without parole sentence, that that separate testimonial statement, Gross had no involvement whatsoever. He didn't weigh it, he didn't observe the weighing, all he did was read the report. The worksheet, the data sheet, they're not in the record, are they? They're not, Your Honor. So we don't for sure know what he did. We have his testimony. Yes, Your Honor, and he explains when asked about the weight, he says, I didn't actually weigh that particular sample. We know how they determine the weight, they weigh it. They put it on the scale that the state has implicitly conceded as much. But they've argued that he's sufficiently involved because he could be cross-examined regarding the accuracy and calibration of the laboratory scales. And because he... We're very, very stingy in what clearly established means. Yes, Your Honor, and in this case, to be clear... So what about, like, Kennedy's dissent, I'm sure it sounds like you know this inside and out. So when I say these things, you'll know immediately. Yes, Your Honor. There's a Breyer concurrence and, of course, the Sotomayor concurrence. They all seem to be saying, we just haven't really yet dealt with lab supervisors. It's just, it's hard. There are implications. We just haven't sorted it out. Well, I think it's interesting. I mean, this goes to whether or not Grimm is correctly decided. But I would think it would... I don't think it does, Your Honor, because here's what the Grimm court said. The Grimm court said, the Supreme Court has not clearly established what degree of involvement with the forensic testing is required of an in-court witness offered to prove a particular fact in a testimonial certification beyond what was deemed insufficient in Bullcoming. To be clear, our claim is that the decision in this case was contrary to, in that the Mississippi Supreme Court encountered a set of facts that was materially indistinguishable from Bullcoming and reached the wrong conclusion. Did the Bullcoming fact that the supervisor signed the form... Your Honor, I think that the question then would be, is that a material distinction? And the answer is no. I think the question we have to ask is, what did that signature mean? When he signed that piece of paper, what was he certifying with his signature? That he'd gone back and looked at the materials in the file to determine that that was an appropriate analysis and that nothing in the file looked out of the ordinary. He did, and that certification, his technical review. All of his testimony explains to us that that technical review and his independent conclusion was that the substance was cocaine. But he didn't conduct a technical review of her conclusion that it weighed 0.1 gram, nor could he. He explained to us what a technical review is. Can you help me on why it matters? Because, okay, under the statute, it doesn't matter, it doesn't have to be 0.1 gram cocaine. Because it can be any detectable amount of cocaine, right? At all. When the 0.1 gram. So as long as the object itself weighs more than 0.1 gram, it doesn't matter if there's some measure of just a tiny speck of cocaine. Isn't that right? Absolutely, Your Honor, and that's the issue. He didn't weigh the substance. This isn't a purity question. This was a question of how much did the substance weigh? The report states that it weighs 0.1. In other words, Allison Smith reported in her report that this substance weighs 0.1 gram. There's no question that that's a testimonial statement. It's being introduced to prove a fact, an essential fact, at Mr. Jenkins' trial. Let's say even something as obvious as weighing something requires multiple people in the lab. This is the Kennedy dissent concern. Yes, Your Honor. Are you urging what I think scholars or someone calls singularity, that then to comply with Crawford and Bullcoming, the government would have to pull in everyone that participated? I think that again goes to questions about whether or not Grimm was wrongly decided. Because the question then is which one of those statements are testimonial. I think that's the best way to understand that sub-question that Kennedy talks about. A lot of lab determinations, to get to a conclusion that's relevant and incriminating, would require multiple participants. It sounds like you interpret Bullcoming, and state courts of appeals have said this, as with that singular focus, you've got to bring in every single one. No, Your Honor.  in terms of the district court's decision in Grimm. I know Grimm isn't in front of that decision. The holding in Grimm in the district court, the district court granted habeas in Grimm, was that Bullcoming requires that the person who did the testing appear. That's not what we think the Constitution requires. What the Constitution requires is that if an out-of-court testimonial statement from one person is admitted into trial, then the defendant has a right to cross-examine that person. That's been the clearly established law since Crawford was decided, since we got rid of Ohio versus Roberts. Grimm says that that's not the law. Grimm says that you can admit one scientist's out-of-court testimonial statement through another scientist. In other words, you get two scientists for the price of one. That's what happened in this case. Or Grimm says it's not yet clear error to do that. Yes, Your Honor. That's an important distinction. Yes, Your Honor. But separate from that, is this case distinguishable from Bullcoming with respect to the weight? Absolutely not. And I'll point the court to the hypo that Justice Ginsburg gave in her opinion for the court. And I'll point out that despite the fact that Justice Sotomayor wrote a concurring opinion, she fully joined Justice Ginsburg's opinion for the court. It was not a plurality opinion. Justice Ginsburg says this. The court says this. Suppose a police report recorded an objective fact. Bullcoming's counsel posited the address above the front door of a house or the readout of a radar gun. Could an officer, other than the one who saw the number on the house or the gun, present the information in court so long as that officer was equipped to testify about any technology the observing officer deployed and the police department's standard operating procedures And the court says, as our precedent may explain, the answer is emphatically no. And Justice Sotomayor agrees with that analysis explicitly in her concurring opinion. That's all that this witness was able to do with respect to weight. He read a report in which Alison Smith presumptively recorded the readout of a scale into her report. And he was prepared, as the state argues, to be cross-examined about the calibration of the scales and the standard operating procedures. If we read the transcript to at least allow for the possibility that he had formed an independent opinion, would you then lose? It depends on how you determine that independent opinion. There's a suggestion in the district court opinion that he reached an independent opinion based on his knowledge of the standard operating procedures. Volcom tells us that that's no, that that's not enough. The fact that he knows that they round down, that a weight reported at .12 will be, a weight that shows up on the scale as .12 will be reported as .1 is not sufficient. That's clear from Volcoming. This witness is exactly the same with respect to weight as Volcoming. He did sign the report as the technical reviewer. But his technical review, by definition, was limited to the cocaine. He explained that what a technical review was was a review to make sure that the data in the file supports the conclusions on the report. And then he explained that the data in the file, in this case, came from the color test, the cobalt thiocyanate test. Your position is the supervisor would only be able to testify if they had independently done the exact test. I think with weight, that would have to be the case because there's only one way to determine how much something weighs, and that's to weigh it. It certainly wouldn't be a burden on the prosecution in a case like weight. There would be nothing preventing the prosecution from wheeling a scale in front of the jury and weighing it in court. This is a fairly straightforward one. The notion that you can piggyback two tests on the back of one technical review. Consider this example. Imagine in a murder case, there's a lab report that includes both blood test results and DNA test results. They were performed by one analyst, and a technical reviewer does a technical review of the blood test results. Could they then admit the full report that includes the DNA results and the blood test results because he did a technical review of the blood test results? I think the answer to that is clearly no. There's no difference here. These are two separate things. A test to determine is it cocaine, and a separate test to determine the weight. I see I'm out of time. Thank you, Counsel. Good morning, Your Honors. My name is Bridget Davis, and I'm a Special Assistant Attorney General with the Mississippi Attorney General's Office. I have here with me, seated at counsel table, Gerilyn Owens. I'm here today on behalf of the Respondent's appellees requesting that this Court affirm the District Court's denial of federal habeas relief in this case. Appellant's challenge to the Mississippi Supreme Court's decision rejecting his Sixth Amendment claim fails, and there's two primary reasons why this is so. First, the law regarding application of the Confrontation Clause to testimony by a supervisor or a reviewer in a crime laboratory is not clearly established. As a result, the decision of the Mississippi Supreme Court was not contrary to, nor an unreasonable application, nor was its application of the law objectively unreasonable. Second, the facts of this case are materially distinguishable from that of Bull Cumming. To my first point, the law regarding application of the Confrontation Clause to testimony by a supervisor or reviewer in a crime laboratory is not clearly established, and that's exactly what this Court held in Grimm. That's the precise issue that Jenkins raises in the present case with respect to both the substance and the weight of the cocaine that he possessed. In support of this Court's conclusion in Grimm, the Fifth Circuit noted that widespread disagreement among the courts regarding Bull Cumming support the conclusion that the law is not clearly established, and the fact that... Do you remember the dissenters in this case at the Supreme Court level? Did they say the dissenting position? Was it that it violated clearly established Supreme Court law? I think the fact that the decision had so many different opinions going on, I think that shows if even the justices couldn't necessarily come to an agreement on the case, that that's an indication that the law is not clearly established in this situation. But you don't recall whether they labeled it as clearly established or not? Not specifically. Do you embrace Justice Kennedy's dissenting position, that there really can't be? I do. I think what... Is that essential to your position? Pause a minute before you answer, because it was a dissent. So the logical inference I would draw is if your position rests on his dissenting position, then Jenkins' argument might be right. And I apologize. I was thinking about Justice Kennedy's dissent and Melinda's diet. That's what I'm talking about. Which is what Justice Ginsburg cited in support of her majority opinion in Bull Cumming. And she cited him as saying that... She quotes Justice Kennedy dissenting in Melinda saying that the court's holding means that the analyst who must testify is the person who signed the certificate. And here that is what we had with Timothy Grace. He signed the certificate as the technical reviewer. He initialed the certificate as the administrative reviewer. A question that opposing counsel asked is, what does the signature mean? And Justice Sotomayor's concurrence, she noted that to certify means to both certify the result and the statements on the form. What if the form said, Smith concluded the substance was weighed this amount? Is it your position that just because he signs it, it could be as that's just around the confrontation cause problem? He signs it and he can get in any statement and opinion of hers. I think that the key is here is the technical review that he performed, that he verified. But he didn't verify the weight. So that can't be the key. Well, he verified that... What's your record site? That's an important point. You just said he verified it. What's the record site that he verified it? He says he testified on direct appeal that the results of the analysis were the evidence submission contained cocaine in the amount of .1 gram. And then he further testified that in his expert opinion, that analysis was correct. That was at 8-12. 8-11 was on direct appeal. But the Crawford analysis and confrontation clause doesn't turn on whether someone's qualified as an expert, does it? Or am I wrong? Just because he's qualified and can talk about some hearsay isn't an exception to the confrontation clause. Don't agree if you disagree. I mean, I think that in this particular situation, him being the expert that he was as the lab supervisor, the technical reviewer, that it qualified him in this case to testify as to what he did. Therefore, at the time of trial, he was the witness against Jenkins. Okay. Do you have authority for that as an exception to this, the bolt coming line? Not off the top of my head. I mean, the record, it's going to have, for us, obviously, granularly and the Supreme Court eventually, for sure, will have to look at a really important foundation that lawyers will have to set so we really know, is this just a custodian mouthpiece type person? Or maybe it's relevant that they're an expert. The difficulty for me is looking at the record. It isn't exactly clear that people refined what it was when he said, I signed. In my opinion, it's .1. Maybe it's there. If he just said, I did it because Smith told me I did it, that was it. I don't see how being a supervisor gets him anywhere. Yeah. I think it's just the fact that it's not the title, but it's the actual review that he performed. Whose signing? Well, his involvement in the case. He doesn't have no connection whatsoever. This is the type of case, as the magistrate judge pointed out, that this is the case that was contemplated by Justice Sotomayor and her concurrence. Because here we have the testifying witness is the supervisor or technical reviewer who has a personal, albeit maybe limited connection. But again, it's a matter of degrees. It didn't say that he had to physically- What do we know from this record? When you use verbs like connected to, involved with, what's the clearest statement by him in the record what that meant? As to weight. I think that in his expert opinion, he testified that the analysis was correct. Okay. So it comes down to a- He testified that there are checks and balances in place, and it's his job to make sure that all the procedures in the lab are followed. Right. That was at record site 810. On cross, the defense questioned him regarding the actual amount of cocaine. That was at 813. And he said that the lab has a test quantitation, but the lab doesn't perform that under Mississippi law. They're just required to prove that the entire amount of the substance or a mixture- The arresting officer, Brennan, he didn't weigh it, right? It's not written on the exhibit. He can- There's no weight from Brennan. Not to my knowledge. He just said that there were two- And then no witness had a scale in court, correct? Correct. And we don't have the data sheet, and we don't have the worksheet. Just really unclear who did the weighing. But I think that because he did have a limited connection to the testing as the technical reviewer and as the supervisor, that that satisfied the right to confrontation in this case because he was the witness against Mr. Jenkins at trial. If we disagreed, is there a harmlessness argument here, or really you didn't present it because in closing argument, a lot of people were pointing to gross? Well, I think that this is subject to a harmless error analysis. It would be, but you didn't argue that, did you? And that may be because you're telling us candidly that the closing argument focused a lot on the gross assessment of weight. And you're talking about at trial? Yeah, at trial. Well, in the district court, we did argue that this would be subject to a harmless error analysis. But at trial, it was argued that the elements were met, that the substance was cocaine, and that the substance did weigh 0.1 gram at least. It couldn't be harmless, could it? I think the argument for the harmless error in this case would be the fact that gross was accepted as an expert without objection at the time. That was on 806 of the record. As a result, gross testified that as the technical reviewer in this case, he reviewed the entire case file. He reviewed some of his worksheets. But you have to use his testimony. If you're having to use his testimony because it proves an essential element of the case, then it's, you know, we had a confrontation earlier today. And the issue was can you throw out the testimony altogether and still meet the elements? And you cannot here, can you? I think the argument would be that, and I think the Williams plurality is informative in this regard, with its discussion of the fact that under the rules of evidence that an expert is allowed to testify based on materials that he's reviewed for which he lacks firsthand knowledge of. And at that point it becomes a question of the weight of the evidence and not its admissibility. So I think the argument would be that had gross simply testified as the expert witness without the report being admitted into evidence, the jury still would have heard the same testimony regarding the substance of the weight and that the confrontation clause wouldn't have been triggered based on that. I think that would be the harmless alternative argument to make. There would be no basis for his expert opinion. But I think here, because this is a habeas case, we can't get past the fact that the law is not clearly established. Right, that's your best argument by far. Your harmlessness, in my opinion, is a difficult row to hoe. Again, I think that would be in the alternative, assuming that there was error. But again, here, because the law is not clearly established, as this court held in Grimm, that when the prosecution introduces a forensic laboratory report containing a testimonial certification made for the purpose of proving a particular fact, the prosecution cannot do so through the in-court testimony of a technical reviewer who signed the report and was more involved in the testing and the report than was the witness in Bull Cumming. I think that the key here is just that the law is not clear. So I think that the Mississippi Supreme Court's decision, which considered the merits of Jenkins' Sixth Amendment claim and rejected that, it cannot be said that that was a decision that was contrary to clearly established federal law, nor was its decision on the issue objectively unreasonable. This case is materially distinguishable from that of Bull Cumming.  The magistrate found that he correctly concluded that Jenkins' case is the type of case contemplated by Justice Sotomayor, as I mentioned earlier. This is a case in which the person testifying is a supervisor, a reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue. And while it's true that two of these cases share certain similarities, there are massive differences between the two. Here, a lab report was entered into evidence. The primary analyst who physically conducted the testing was not called a witness, but you can't stop there with the comparison and the analysis. In this case, the testifying witness, Gross, was the lab supervisor, technical reviewer, assigned to Jenkins' specific case. Therefore, he oversaw the primary analyst and all of her work that she did. Gross testified that he reviewed the entire case file, including the testing analyst worksheet. And again, just the final report with the ultimate conclusions, that's all that was entered into evidence. But I think that the argument is there that he did review all of her work for this. He verified the results and certified the findings by assigning the final report as the technical reviewer. He testified as an expert witness to his own conclusions based on the review of all of that and not just simply the report. So as a result, all of those facts are crucial in distinguishing the two cases and show that this case is materially distinguishable from Bull Cumming. And in this case, Gross reached his own conclusions and he was, in fact, the witness against Jenkins at trial. The district court recognized that, quote, the only significant difference between this case and Grimm's was that the weight was at issue in the prosecution of Jenkins and it was not in Grimm. However, the fact still remained that the testifying witnesses in both cases were technical reviewers. They were supervisors who performed procedural checks, conducted technical reviews, and had the same level of involvement in the analyses and preparation of the reports. That was the district courts. Counsel, do you have anything further or anything else? I would just point out that the district judge further cited your decision, Judge Higginson, in Williams v. Vinoy in support of his decision to deny relief in this case. And that is an unpublished opinion. It was issued September of 2016 following this court's decision in Grimm. In that case, it did involve an unexhausted confrontation clause claim. However, in that opinion, the supervisor of the DNA laboratory testified as an expert who had a personal connection to the scientific testing and actively reviewed the results of the forensic analyst testing and signed off on the report. Therefore, the supervisor was allowed to testify without violating the confrontation rights of Williams in that case. I want to look at that again. I'm just curious. When you say unpublished and yet it's mine, did I author that or is it a per curiam? It had your name, but I believe it was per curiam. Looking back at it. It doesn't matter. Pineda, she testified that she was responsible for maintaining the standard operating procedures, which was similar in this case. And I think finally, just generally speaking, taking a rigid approach and a categorical rule to these confrontation clause cases, I think it carries severe practical drawbacks. It leaves no meaningful solution where the analysts no longer work at the lab or have died, as did happen here. That's not really true. You could have brought a scale into the courtroom. I mean, there are lots of other, or the person could have tested it themselves back at the lab and had recorded it and invited the other person in to watch it from the expert on the other side if they wanted to. There are so many other things you can do. That is not true here. I think that it can't always be assumed that retesting can always be completed. That's true. That's true. That's why it's important to comply the first time. I agree, and that is what Grace's job was, was to ensure that all the checks and balances that the Mississippi Crime Lab has in place were followed and that everything was done correctly in this case. I do note in the record, Grace talks about specifically telling the jury exactly what Smith would have done. She would have taken the evidence. She would have opened it. She would have visually examined it. She would have obtained the weight of the entire sample, and then she would have taken a sample of that and subjected that to the testing. One of those tests included putting the sample into a chemical solution, dissolving it into that. Next was with an instrumental test. Then he said that she would have taken the remaining evidence and put it back into the bag, which indicates that it couldn't be re-weighed. We know that it weighed 0.1 gram at least, but he did testify that it could weigh up to 0.19 gram, but they round down as that's their procedure that they do. Just in conclusion, I think that given the lack of clearly established law on this particular issue, that it cannot be said that the Mississippi Supreme Court's decision was contrary to or an unreasonable application of clearly established federal law. For those reasons, we ask that this court affirm the district court's denial of federal habeas relief. Thank you. Thank you. What I want to make sure doesn't get lost in the shuffle here in all this talk about Gross conducting a technical review is that everything he said about his technical review was about her test to determine the nature of the substance. He never mentioned anything about any technical review of her test, that is her weighing of the substance, to determine its weight. In fact, when he was asked about the weight of the substance, he admitted that he didn't know because he didn't actually weigh that substance. Your Honor had mentioned at one point during the last discussion that it was unclear who did the weighing. It's absolutely not unclear. He testifies, and this is at 808 of the record, that Ms. Smith would have retrieved this from the evidence vault at the Mississippi Crime Lab through Ms. Deneaux, and then, among other things, she obtained the weight of the exhibit. With respect to counsel's claims that he then later claimed to have an expert opinion regarding the weight, it's just absolutely not the case. The passage that she was mentioning had to do right after the admission of the report. He explains that Ms. Smith would have recorded her conclusions on the report. The question was, and in this case, the results of the analysis are what, Mr. Gross, as in Ms. Smith's analysis? The results of the analysis were the evidence submission number one contained cocaine in the amount of .1 gram. And then the state asks, just so I'm clear, so this report and your review of this report means that these items in this bag that have a Crime Lab tag on them and Biloxi Police Department means that this is .1 grams of cocaine. And he answers, yes, that evidence was identified as cocaine in the amount of .1 gram. There's absolutely one instance during his testimony in which he's asked for his expert opinion, and it's this. In your expert opinion, your expert opinion for which we're here today, the items in that bag that is cocaine, is that correct? He says, yes, that's correct. That's at 812 of the record. He's then cross-examined about purity. Not weight, but purity. Did you represent Jenkins in the Supreme Court? I did not, Your Honor. I represented him on his motion for rehearing in the Supreme Court. I'm curious. Did you file for cert when you didn't face the more daunting, clearly established act? We did, Your Honor. We did file for cert. And to be clear, there was a cert in this case. There was a court of appeals decision, and then a cert to the Mississippi Supreme Court, and then a 5-4 split by the Mississippi Supreme Court. We then came in. We see a smidgen of uncertainty under clearly established law. This is a vehicle to finally get it all cleared up. Yes, Your Honor. And this is, to be clear now, too, we're not – our argument here is that this was contrary to clearly established law. What Grimm says, again, that there is some clearly established law. Obviously, the involvement. Grimm says that involvement is what matters. I think that that's inconsistent with everything that the Supreme Court has said since Crawford, but that's what Grimm says. And they say that what's clearly established is involvement beyond what was deemed insufficient in Bullcoming. And in Bullcoming, what was deemed insufficient was the testifying witness was available for cross-examination regarding the operation of the GCMS machine, the results of Bullcoming's BAC test, and the – Bullcoming's 2011, right? Yes, Your Honor. What federal circuit has accepted your theory in the intervening seven years? The 11th Circuit has, Your Honor. And I'm not going to remember the site offhand. But what's the name of the case? I'm not going to remember either. Okay. It's in your brief, though. And it was an autopsy case. I believe it is in the brief, Your Honor. It's certainly in the pleading somewhere. I can file a Rule 28J. It had to do with autopsies and the issue there. And, again, I know that this court as a panel is bound by Grimm. But certainly, obviously, if the court were to determine that there was more involvement than Bullcoming here, we would seek an en banc reversal of Grimm because we do think it's inconsistent with everything the court has said. Yeah. It's just if there's another circuit that said the opposite, that's very relevant to our assessment. Yes, Your Honor. It's an autopsy case, and there's a great deal of dispute out there about whether or not autopsies are testimonial reports or not. Okay. I don't see it in your brief. Yes, Your Honor. It's probably in the earlier pleadings in the district court, but I can find it and submit it through a 28J if you'd like me to. You may do so, and you may submit a 28J responsive seven days after. Thank you, Your Honor. Thank you. Thank you. This case is submitted.